**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **MARYTZA GOLDEN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **CAUSE NO: 1:15-cv-00766-RLY-DML** |
| | ) |
| **INDIANAPOLIS HOUSING AGENCY** | ) |
| | ) |
| **Defendant.** | ) |

<u>**PLAINTIFF'S BRIEF IN SUPPORT OF SUMMARY JUDGMENT AND**</u>
<u>**RESPONSE IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT**</u>

Plaintiff, Marytza Golden ("Golden"), by counsel and pursuant to Federal Rule

Civil Procedure 56, hereby submits her consolidated Brief in Support of Summary

Judgment and Response in Opposition to the Indianapolis Housing Agency's

("Defendant") Motion for Summary Judgment.

**I.      Introduction**

For over fifteen (15) years Golden worked as a Police Officer for Defendant

serving the citizens of Indianapolis.  By all accounts, she performed her job well and

loved what she did.  In November of 2014, Golden was diagnosed with cancer.  From

December 17, 2014, until March 16, 2015, Golden took twelve (12) weeks of leave under

the FMLA.  On April 13, 2015, after taking an additional four (4) weeks of leave, Golden

requested additional leave pursuant to Defendant's own written leave policy.  Less than a

day later, without speaking again with Golden, Defendant unilaterally denied Golden's

request without any explanation or interaction.  According to Defendant, it is simple – if

an employee is not able to return to work after sixteen (16) weeks of maximum leave,

they are automatically terminated.  It does not matter if they have a return to work date,

1

nor does it take into account any individualized circumstances.  Incredibly, Defendant stands by this unwritten policy of automatic termination despite having a written policy that grants employees six (6) months of additional unpaid leave.  Golden is entitled to summary judgment on her claims under the Rehabilitation Act for the simple reason that Golden's situation has exposed Defendant's rigid, inflexible, and unlawful medical leave policy.  Defendant's policy fails to conduct individualized assessments, it fails to engage in the interactive process, and in this case it failed to provide a reasonable accommodation to Golden of extended medical leave.  Accordingly, the undisputed facts demonstrate that judgment on liability should be entered in favor of Golden and against Defendant.

## II.      Statement of Material Facts Not in Dispute[1]

### A.      Dates of Employment, Positions Held, and Medical Leave

Defendant is a federally funded employer within the meaning of Section 504 of the Rehabilitation Act.  [Exh. A, Answer ¶ 5; Exh. B, Myers Dep. p. 22].  Golden's position is federally funded through a COPS grant.  [Exh. C, Grant Email; Exh. D, S. Golden Dep. p. 35].  Golden worked for Defendant as a sworn Police Officer from June of 1999 until her termination on April 14, 2015.  [Answer ¶ ¶ 11, 12, 30].  In November of 2014, Golden was diagnosed with breast cancer.  [Exh. E, Golden Dep. p. 51-53].  Defendant was aware of Golden's cancer diagnosis and treatment prior to her termination.  [Exh. F, Walden Dep. pp. 39, 49; Exh. G, Simmons Dep. pp. 20-21; Myers Dep. p. 29].

---

[1] Plaintiff focuses only on undisputed facts that are material and relevant.  In the event this matter is tried before a jury, Plaintiff reserves the right to allege and dispute any and all facts, including facts not explicitly referenced or cited in this Brief.

From December 17, 2014, until March 16, 2015, Golden used all available twelve (12) weeks of leave under the Family Medical Leave Act.  [Answer ¶ ¶ 18 – 20]. Defendant provided Golden with an additional four (4) weeks of leave from work. [Answer ¶ 25].  Defendant routinely provides an additional four (4) weeks beyond the FMLA due to past precedent.  [Walden Dep. pp. 42-43].  Defendant provides this additional four (4) weeks of leave without requiring a return to work date.  [Walden Dep. p. 38; Simmons Dep. p. 21].  However, on April 14, 2015, Defendant refused to provide Golden with any additional leave and terminated her employment.  [Answer ¶ 26].

**B.**     **General Leave of Absence Policy and Golden's Request for Leave**

Defendant's written policy entitled "General Leave of Absence (Unpaid Leave)" states, in part, "[t]he Director of Human Resources in conjunction with the Department Director, may approve a leave without pay for a specified period of time (not to exceed six (6) months) when it is determined that no other leave form is appropriate."  [Exh. H, GLOA].  According to Kathy Walden, the Director of Human Resources, the language "no other leave form is appropriate" does not include Long Term Disability, which is a benefit and not a form of leave.  [Walden Dep. pp. 9, 81].  Under the General Leave of Absence policy, leave is unpaid and the employee is required to pay his or her own insurance premiums.  [GLOA].  The General Leave of Absence Policy does not require an exact return to work date.  [Walden Dep. p. 65].

After Golden was diagnosed with cancer, Defendant never communicated with Golden about its General Leave of Absence policy.  [Golden Dep. p. 173; Simmons Dep. p. 31; Walden Dep. pp. 46-48].  Although Defendant provided numerous letters and certification paperwork to Golden, after Golden's cancer diagnosis Defendant never

provided her with a copy of its General Leave of Absence Policy or even verbally notified Golden of her ability to seek six (6) months of additional leave under the General Leave of Absence policy.  [Golden Dep. p. 173; Simmons Dep. p. 31; Walden Dep. pp. 46-48].

On April 13, 2015, Golden sent an email to Kathy Walden (Director of HR), Richard Simmons (HR Specialist), Michael Mays (Captain and direct supervisor), and Rufus Myers (Executive Director of IHA) and stated as follows:

> I am requesting an unpaid leave of absence per city policy.  If you have additional questions please contact me as you are aware I am off work due to diagnosis of cancer and I was informed today by Human Resources that Tuesday, April 14, 2015 will be my last day of employment.

[Exh. I, Email Request Leave; Simmons Dep. p. 14].

### C.    Denial of Leave and Reason for Termination

On April 14, 2015, at 3:22 p.m., just hours after Golden made her request, Walden sent an email to Golden that stated "[y]our unpaid leave of absence request has been denied."  [Exh. J, Denial Email].  The email did not provide any explanation as to why Golden was not afforded the additional leave.  [Denial Email].  Walden did not consult with any Department Director prior to making her decision.  [Walden Dep. p. 53]. Walden never reviewed Golden's job description with Golden to determine when Golden may be able to perform certain job duties.  [Walden Dep. p. 52; Golden Dep. p. 175]. Walden never communicated with Golden about when she might be able to return to work.  [Walden Dep. p. 52].  According to Walden, she was the lone decision-maker behind Golden's termination.  [Walden Dep. p. 50, 52-53, 66, 69].

Walden denied Golden's request and terminated her employment because Golden had exhausted all sixteen (16) weeks of available medical leave.  [Walden Dep. pp. 50-51].  Per the sworn testimony of William Owensby, the former FOP President who was helping Golden at this time, Walden explained to him that termination was necessary because Golden had exhausted all available leave.  [Exh. K, Owensby Decl. ¶ 4].  Per Owensby, "Walden told me that Ms. Golden had exhausted all leave and IHA had exhausted all legal avenues on what they could do for her.  Walden said there was nothing else IHA could do."  [Owensby Decl. ¶ 4].  Walden agrees she made these statements.  [Walden Dep. p. 74.  Indeed, Walden testified as follows:

> Q: What is the reason you denied the request?
> A: Because it's stated in the FMLA and in our policy after you exhaust your 12 weeks of FMLA that's granted by the federal government and then you exhaust the 4 additional weeks that's granted by the agency, you're no longer an employee of the agency.
> Q: And there's no exceptions to that?
> A: No exceptions.

[Walden Dep. pp. 50-51].  Simmons, the Human Resources Generalist under Walden who also has authority to approve or deny medical leaves, echoed this lack of an individualized approach:

> Q: And so, at IHA, after 16 weeks of continuous leave, automatically terminated if you can't return to work?
> A: For medical reasons, yes[2].
> Q: Regardless of the individual circumstances at play?
> A: Regardless.

[Simmons Dep. p. 47; Walden Dep. p. 37].

---

[2] Defendant's qualification "for medical reasons, yes," is an admission of direct evidence. Defendant is willing to grant longer leave for non-medical reasons, but employees may not exceed sixteen (16) weeks of continuous leave for medical reasons.

Golden's LTD ended on March 18, 2016.  [Exh. L, Lincoln Letter].  Golden's status on LTD does not provide her with any right to be restored to her job.  [Simmons Dep. p. 39].  Golden lost her law enforcement powers as a result of the termination. [Golden Dep. p. 175].  Without her law enforcement powers, Golden cannot perform part-time security work.  [Golden Dep. p. 160].  Golden suffered her first anxiety attack in April of 2015.  [Golden Dep. pp. 164-65].  In Golden's own words: "For IHA not to be there to support me and to take my badge and my gun, I felt like I was just, you know, oh, well, too bad.  You know, go die in a corner.  Go fight it yourself.  Not having a job, being unemployed without having any kind of disability or medical condition is hard. But having everything that I had to deal with, plus this, you could not even begin to imagine unless you have gone through it."  [Golden Dep. p. 166].

### D.      Defendant's 16 week Automatic Termination Policy

Defendant has a policy and practice of automatically terminating employees if they are not released to return to work within sixteen (16) weeks of medical leave. [Walden Dep. pp. 27, 31-32].  Per Walden, the Human Resources Director, "if an employee goes past the 16 weeks and their doctor states that they're not able to return, then they will be terminated."  [Walden Dep. p. 27].  Defendant does not deviate from this automatic termination policy to accommodate individual circumstances.  [Simmons Dep. p. 47].  Walden testified that no situation would warrant granting continuous leave beyond the twelve (12) weeks of FMLA and four (4) additional weeks.  [Walden Dep. pp. 33-34].  Even if Golden, on April 13, 2015, had provided a firm return to work date of August of 2015, within the six (6) month leave period, Walden still would have terminated Golden.  [Walden Dep. p. 68].  If an employee is not released to return to

work within the sixteen (16) weeks, they are automatically terminated.  [Walden Dep. pp.

32, 43, 68].  Per Walden:

> Q: And after 4 weeks, that additional 4 weeks, you weren't
> going to give any sort of accommodation to Ms. Golden, she
> was terminated; correct?
> A: That is correct, that is the practice.
> Q: You weren't even going to look into an accommodation,
> correct, because she had done 16 weeks; correct?
> A: Correct.

[Walden Dep. pp. 92-93].

### E.     Golden's Anticipated Return to Work Date – August of 2015

Prior to her termination, Golden spoke with Simmons on numerous occasions

about her expected return to work date in August of 2015.  [Exh. M, P's Interr. Resp. ¶ 3;

Golden Dep. pp. 124-26, 174].  Golden "continuously informed Simmons that she

expected to return to work in August of 2015, because [she] was aware that her FMLA

leave would expire prior to August of 2015.  On April 7, 2015, [she] again verbally

informed Simmons that she expected to return to work in August of 2015."   [P's Interr.

Resp. ¶ 3]. Golden told Simmons what her treatment plan would be and her plan to return

in August. [Golden Dep. p. 174].  Simmons has no independent memory to dispute

Golden's testimony on this point.  [Simmons Dep. p. 41-42].

Golden's treatment plan originally encompassed her final surgery in August of

2015, and then her return to work shortly thereafter.  [Golden Dep. pp. 125-26].

Golden's plan did not go as expected, in part because of the stress due to her termination

of employment.  [Golden Dep. pp. 155-56].  Even though Golden's surgeries were

pushed back a few months, Golden was released to return to work on light duty effective

July 6, 2015.  [Exh. N, Release June 10, 2015; Golden Dep. pp. 83-84, 155-56].  Since

Golden's termination, Defendant has had light duty work available for Golden.  [S. Golden Dep. pp. 28-29; Exh. O, S. Golden Decl. ¶ 3].  According to Steve Golden, "the majority of the work that we do is in front of a computer and we never leave the office." [S. Golden Dep. p. 28].  Per Myers, the Executive Director, Steve Golden would be the person who knows if light duty work is available for police officers.  [Myers Dep. p. 78; Simmons Dep. p. 45].  With regard to the availability of light duty, Steve Golden has testified as follows: "Light duty work was available for Marytza Golden in July of 2015, when she was released to return to work in a limited capacity . . . my department could have easily reinstated Ms. Golden in a light duty capacity . . . I can unequivocally testify that my department has had ample work available for Ms. Golden to perform within her restrictions."  [S. Golden Decl. ¶ 3].

**F.     No Evidence of Undue Burden or Expense**

Golden's requested leave would not place any financial costs or burdens on Defendant.  [Walden Dep. p. 53; Simmons Dep. p. 42].  Walden was not aware of any financial costs or burdens on Defendant to grant Golden's request for additional leave. [Walden Dep. p. 53].  Golden was asking for unpaid leave, not paid leave.  [Walden Dep. p. 64].  Golden's position is federally funded through a COPS grant.  [S. Golden Dep. p. 35].  Simmons is not aware of any evidence that would support Defendant's undue burden or expense defense in this case.  [Simmons Dep. p. 42].  Myers, the Executive Director over Defendant, is not aware of any evidence that would support Defendant's undue burden or expense defense.  [Myers Dep. pp. 20, 50-52].

### III.     Statement of Material Facts in Dispute

1.     "At no time prior to her termination did Ms. Golden provide IHA with a return-to-work date on any of her medical certifications."  [Def.'s Br. P. 8, citing Simmons Dep. p. 52].

Dispute: Golden disputes this assertion on the grounds that it is ultimately irrelevant.  The undisputed facts show that Defendant would have terminated Golden on April 14, 2015, regardless of whether she had a firm return to work date in the proceeding six (6) months. [Walden Dep. p. 68].  Moreover, Golden repeatedly verbally informed Simmons that she expected to return to work in August of 2015.  [Golden Dep. pp. 124-26, 174].

2.     "In her own words, Ms. Golden described her disability's impact on her ability to work as 'I cannot keep myself safe let alone a civilian' and 'I don't/can't handle a gun safely right now.'"  [Defendant's Br. P. 10, citing Golden Dep.].

Dispute: Golden disputes Defendant's cherry-picking of this statement because it is misleading, incomplete, and irrelevant.  Golden made this statement on May 7, 2015, at a time when Golden should have been on medical leave.  During her deposition, Golden testified that as of July 6, 2015, she could return to work and complete light duty work as a police officer.  [Golden Dep. pp. 83-84].  Golden worked light duty in the past without any issues.  [Golden Dep. p. 104].  In the last six (6) to eight (8) years, Defendant has conducted more fraud and investigative police work, which in turn requires paperwork. [Golden Dep. p. 84].  Golden could have watched over the communities via cameras, she could have developed criminal information, she could have worked on criminal

9

investigations, she could have interviewed witnesses and informants, and she could have investigated civil disputes.  [Golden Dep. pp. 106-09].

3.      "Ms. Golden did not ask IHA for any reasonable accommodation from December 17, 2014, through April 15, 2015."  [Def.'s Br. p. 11, citing Golden Dep. p. 110].

Dispute: Golden disputes this assertion because Golden's email on April 14, 2014, wherein she requests "an unpaid leave of absence per city policy," constitutes a request for reasonable accommodation.  During her deposition, Golden clarified that she was requesting six (6) months of extended medical leave without pay.  [Golden Dep. pp. 97-98].  Further, Defendant completely ignores the following exchange:

Q:      What kind of accommodation were you looking for?
A:      At that time I needed, I just needed time to fight my disease and get better. I needed time to get better and be able to return to being a police officer. According to my medical plan that I had from my doctors, that would have been more than sufficient time.
. . .
Q:      So you wanted a six month leave without pay as an accommodation of your disability?
A:      I would call it that, yes.

[Golden Dep. pp. 152-53].

4.      "Ms. Golden does not know if she had been granted an extra six months of unpaid leave whether she would have been able to perform the essential duties of her job at the expiration of the extra leave."  [Def.'s Br. p. 12, citing Golden Dep. pp. 155-56].

Dispute: Golden unequivocally testified that she could perform light duty work in July of 2015, which was well within the six (6) months of requested medical leave. [Golden Dep. pp. 83-84].  Defendant has had light duty work available for Golden.  [S. Golden Dep. pp. 28-29; S. Golden Decl. ¶ 3].

10

## IV.    Argument

The Rehabilitation Act incorporates all relevant provisions under the Americans with Disabilities Act, as amended ("ADAAA").  *Bellino v. Peters*, 530 F.3d 543, 548 (7th Cir. 2008).  The ADAAA places an affirmative duty on employers to make reasonable accommodations, absent undue hardship or expense, to individuals with disabilities.  42 U.S.C. § 12112(b)(5)(A); 29 C.F.R. § 1630.9.  To prevail on a failure to accommodate claim, Golden must show that (1) she is a qualified individual with a disability, (2) Defendant was aware of her disability, and (3) Defendant failed to reasonably accommodate her disability.  *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013).

When analyzing a failure to accommodate claim, an employer's motive or intent is irrelevant.  *Lenker v. Methodist Hospital*, 210 F.3d 792, 799 (7th Cir. 2000).  This is because strict liability attaches to failure to accommodate claims.  *Ragan v. Jeffboat LLC*, 149 F.Supp.2d 1053, 1063 (S.D. Ind. 2001).  In *Ragan*, the District Court stated that "a failure to accommodate case gives rise to a form of strict liability, a proof scheme in which the motive and intent are irrelevant."  *Id*.  In *Lenker*, the Seventh Circuit stated that "if the plaintiff demonstrated that the employer should have reasonably accommodated the plaintiff's disability and did not, the employer has discriminated under the ADA and is liable."  *Lenker*, 210 F.3d at 799.

Here, Defendant is strictly liable for its failure to provide a reasonable accommodation of up to six (6) months of unpaid leave to Golden.  The undisputed facts demonstrate that (1) an unpaid leave of absence for six (6) months is a reasonable accommodation, (2) Defendant was aware of Golden's disability, and (3) Golden is a

qualified individual with a disability.  Additionally, Defendant committed a *per se* discriminatory violation of the ADAAA by automatically terminating Golden after sixteen (16) weeks of continuous medical leave without conducting an individualized assessment.  Accordingly, Golden requests summary judgment in favor of Plaintiff and against Defendant.

**A.     Six (6) Months of Unpaid Leave is a Reasonable Accommodation**

An employee requesting an accommodation, such as extended medical leave, only needs to demonstrate that the requested accommodation is reasonable on its face, ordinarily, or in the run of cases.  *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). Guidance to the ADAAA identifies leave from work as a potential reasonable accommodation.  42 U.S.C. § 12111(9)(B); 29 C.F.R. § 1630.2(o)(Interpretive Guidance, Appendix)("other accommodations could include permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment.").

Multiple cases, in and out of the Seventh Circuit, recognize that medical leave from work can be a reasonable accommodation.  *Haschmann v. Time Warner*, 151 F.3d 591, 601 (7th Cir. 1998); *Basith v. Cook County*, 241 F.3d 919, 932 (7th Cir. 2000); *EEOC v. MISO*, 2013 WL 2389856, * 4 (S.D. Ind. May 30, 2013); *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999); *Amadio v. Ford Motor Co.*, 238 F.3d 919 (7th Cir. 2001); *Corder v. Lucent Technologies, Inc.*, 162 F.3d 924 (7th Cir. 1998); *Oestringer v. Dillard Store Services, Inc.*, 92 Fed. Appex. 339 (7th Cir. 2004); *Aspen v. Wilhelmsen Ships Service*, 2015 WL 1020660, * 5 (E.D. Pa. Mar. 9, 2015); *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 648 (1st Cir. 2000); *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 185 n5 (2nd Cir. 2006); *Walton v. Mental Health Assn. of Southeaster Pa.*,

168 F.3d 661, 671 (3rd Cir. 1999); *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir. 1998); *Browning v. Liberty Mutual Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999); *Nunes v. Wal-Mart Stores, Inc.*, 298 F.3d 955, 967 (10th Cir. 2002); *Holly v. Clairson Indus.*, LLC, 492 F.3d 1247, 1263 (11th Cir. 2007); *Taylor v. Rice*, 451 F.3d 898, 910 (D.C. 2006)[3].

When looking at extended medical leave under the unique circumstances of each case, courts commonly consider three (3) main factors in determining whether extended medical leave is a reasonable accommodation: (1) the nature (continuous, sporadic, explained, unexplained) of the employee's absence from work; (2) the length of the employee's absence from work; and (3) the requested duration of the leave of absence. Courts draw distinctions between cases where an employee is erratically absent for unexplained reasons, versus a situation like this case where the employee has been on medical leave for a known condition and requests extension of that medical leave prior to being terminated. *Garcia v. Ill. Dept. Children Family Services*, 2006 WL 2632919, * 11 (N.D. Ill. 2006); *see also Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) (explaining difference between erratic and unexplained leaves versus predictable and explained leave).

Courts also tend to treat extremely long absences from work outside of the protections of the ADAAA. *See Hamm v. Exxon Mobil Corp.*, 223 Fed. Appx. 506, 508 (7th Cir. 2007) (two (2) year absence from work disqualified from ADAAA protection); *Nowak v. St. Rita High School*, 142 F.3d 999, 1004 (7th Cir. 1998) (employers do not

---

[3] Even if the accommodation is not reasonable in the run of cases, the employee may still show that the accommodation is reasonable in the particular case. *EEOC v. United Airlines, Inc.*, 693 F.3d 760, 762 (7th Cir. 2012).

need to provide indefinite leave).  Finally, courts look to see if the employee requested indefinite medical leave, or if an employee requested a finite amount of medical leave. *Shim v. United Air Lines, Inc*., 2012 WL 6742529, * 8 (Hawaii D.Ct. Dec. 13, 2012); *Taylor v. Pepsi-Cola Co*., 196 F.3d 1106, 1110 (10th Cir. 1999).  Here, in light of these factors and the undisputed facts, the only conclusion from the evidence is that Golden's request for six (6) months of unpaid leave constitutes a reasonable accommodation under the ADAAA.

First, Golden's request for a finite amount of unpaid leave was made pursuant to Defendant's own written policy.  The General Leave of Absence Policy states, in part, "The Director of Human Resources in conjunction with the Department Director, may approve a leave without pay for a specified period of time (not to exceed six (6) months) when it is determined that no other leave form is appropriate."  The presence of this policy, alone, demonstrates that leave up to six (6) months is deemed reasonable to Defendant.  Golden exhausted all available leave under the FMLA, and after being provided an additional four (4) weeks of leave, Golden made a request under Defendant's General Leave of Absence policy for an additional six (6) months of unpaid leave.  No other leave was available to Golden.

In *Shim*, the District Court found the presence of a written policy very persuasive and held that "[w]here an employee's request [for a LOA] is consistent with documented employer leave policies, the courts are more likely to find that the leave is a reasonable accommodation.  On the other hand, courts tend to find that a leave request that exceeds existing employer policies is not reasonable."  *Shim*, 2012 WL 6742529 at * 8; *see also Nunes*, 164 F.3d at 1246 (written policy allowing one year of leave without pay

14

reasonable); *Hoggatt v. Electrolux Home Products, Inc.*, 2010 FL 5211604, * 8 (M.D. Tenn. Dec. 16, 2010) (noting that employer "dropped the ball" by failing to consider its own unpaid leave policies). Golden's request was made pursuant to and consistent with Defendant's General Leave of Absence policy.

Second, Golden requested a finite amount of leave and Golden informed Defendant that she intended to return to work prior to the expiration of the six (6) months permitted under the policy. Contrary to Defendant's assertion on page 24 of its Brief, Golden did not request indefinite medical leave. Although Golden had exhausted all leave under the FMLA, additional leave beyond the FMLA may be required as a reasonable accommodation under the ADAAA. *Shannon v. City of Philadelphia*, 1999 WL 1065201, * 6 (E.D. Pa. Nov. 23, 1999) (three (3) months of medical leave beyond twelve (12) weeks of FMLA could be reasonable accommodation); *see also Jelsma v. City of Sioux Falls*, 744 F.Supp. 2d 997, 1017 (D.S.D. 2010) ("Congress designed the FMLA and ADA to dovetail together to protect American workers."). Pursuant to Defendant's own policy, Golden only requested six (6) months of extended leave, which would have extended her leave to October 14, 2015. Prior to this request, Golden informed Richard Simmons of Human Resources of her treatment plan and specifically her anticipated return to work date in August of 2015. Simmons has no memory to dispute this assertion, thus Defendant cannot dispute this fact. [Simmons Dep. pp. 41-42]. Further, Golden was released on light duty in July of 2015, within the requested leave period, and Defendant had light duty work available during this time.

Third, this is not a situation where Golden sporadically missed days of work without explaining her condition or whereabouts to her employer. Defendant knew that

Golden was diagnosed with cancer.  Defendant knew that Golden had taken FMLA to treat her cancer.  Defendant knew that Golden made a request for additional unpaid leave of up to six (6) months.  Defendant knew that Golden had exhausted all other available leave.  Defendant simply "dropped the ball" by not following its own written policy.

Fourth, Golden anticipated returning to work in August of 2015, and Golden did not need to provide an exact return to work date for her request to be reasonable. "The ADA does not require an employee to show that a leave of absence is certain or even likely to be successful to prove that it is a reasonable accommodation." *Shim*, 2012 WL 6742529 at * 10.  Golden was in the midst of surgeries and chemotherapy.  Employees in Golden's situation do not possess crystal balls providing exact return to work dates.  The ADAAA cannot reasonably be interpreted to mandate that employees' medical providers submit guaranteed return to work date under these circumstances.  The First Circuit's view of return-to-work dates is especially instructive:

> Some employees, by the nature of their disability, are unable to provide an absolutely assured time for their return to employment, but that does not necessarily make a request for leave to a particular date indefinite.  Each case must be scrutinized on its own facts.  An unvarying requirement for definiteness again departs from the need for individual factual evaluation.

*Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 648 (1st Cir. 2000).

The General Leave of Absence policy provides a finite amount of leave (6 months) and does not require an exact return to work date prior to approval.  Golden did not request any leave beyond six (6) months under this policy.  By requesting a finite amount of leave, Golden provided Defendant with a de facto return to work date no later

than October 14, 2015.  Moreover, Golden verbally informed Defendant of her treatment

plan and her expected return to work date of August of 2015, prior to the deadline.

Prior to her termination Defendant automatically, and quite arbitrarily, provided

four (4) weeks of additional leave to Golden without a return to work date.  There is no

rational reason why Defendant could not have provided additional leave to Golden

without an exact return to work date.  When asked to explain why Defendant grants four

(4) weeks of leave beyond the FMLA without a return to work date, Walden cited past

precedent.  But as will be explained below, the ADAAA requires individualized

assessments and an interactive process, not across-the-board blind allegiance to arbitrary

policies and past precedent.

Further, and perhaps most importantly, an exact return to work date would not

have saved Golden nor mattered to Defendant.  Walden admitted that the only way

Golden would have remained employed is if she was released to return to work *before* the

expiration of sixteen (16) weeks of medical leave.  [Walden Dep. pp. 27, 31-32, 43, 92-

93].  Walden admitted that a return to work date within the six (6) month period did not

matter, and her decision would have remained the same.  [Walden Dep. p. 68].  Even if

Golden's physicians had provided an exact return to work date within the six (6) month

leave period, Defendant would still have denied Golden's request.  [Walden Dep. p. 68].

Defendant's return to work date argument is nothing but a red herring.  Defendant

automatically terminates employees, such as Golden, if they are not released within the

sixteen (16) weeks of maximum medical leave.  Defendant treats any subsequent return

to work date as irrelevant and not worthy to invoke the reasonable accommodation

process.

Finally, "[o]nce the plaintiff has shown that [she] seeks a reasonable method of accommodation, the burden shifts to the defendant/employer to 'show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *United Airlines*, 693 F.3d at 763.  Defendant has no evidence that Golden's request would have constituted an undue burden or expense.  Golden sought *unpaid* leave from work, not paid leave.  Under the General Leave of Absence policy, Golden would have been required to pay her own insurance premiums during her leave of absence.  Walden, Simmons, and Myers all failed to provide any evidence showing any type of burden or expense on Defendant, let alone any significant burden or expense if Defendant would have granted Golden's request.  Indeed, Defendant proffered no undue burden or expense argument in its summary judgment Brief.

**B.    Defendant was Aware of Golden's Disability and Request for Extended Medical Leave**

The second element of an ADAAA failure to accommodate claim requires proof that the employer knew about the disability.  Here, there is no dispute that Defendant was aware of Golden's cancer prior to her termination.  [Walden Dep. p. 49; Simmons Dep. pp. 20-21; Myers Dep. p. 29].

Defendant contends that Golden did not demand or request any kind of accommodation, but this argument simply cannot be reconciled with Golden's email on April 13, 2015, which explicitly stated "I am requesting an unpaid leave of absence per city policy . . . as you are aware I am off work due to diagnosis of cancer . . . ."  First, Defendant contends her request violated the policy because it was not made at least two (2) weeks in advance of the anticipated leave.  [Def.'s Br. p. 22].  In response, Golden points out that the timing of her request was due to Defendant's failure to notify her of

the General Leave of Absence Policy.  Golden was advised of the city policy through the FOP President, not by Defendant, and Golden made her request the same day she learned of the possibility of obtaining more leave under the city policy.  [Golden Dep. pp. 93-94]. Further, Defendant has presented no evidence to suggest that the timing would somehow create an undue burden or expense in granting her request.  Golden was on medical leave at the time of her request.  The two (2) weeks prior notice could only reasonably apply to situations where Defendant needs time to prepare for leave with a currently working employee, not Golden's situation.  When asked to explain why she denied Golden's request for more leave, Walden never mentioned the timing of her request as a reason. [Walden Dep. pp. 50-51].  Walden never mentioned two (2) weeks notice, and instead testified "[b]ecause it's stated in the FMLA and in our policy after you exhaust your 12 weeks of FMLA that's granted by the federal government and then you exhaust the 4 additional weeks that's granted by the agency, you're no longer an employee of the agency."  [Walden Dep. pp. 50-51].

Second, Defendant claims that her request was not appropriate because other types of leave were available.  [Def.'s Br. p. 22].  This is simply not true.  At the time of her request, Golden had exhausted her twelve (12) weeks of FMLA and four (4) weeks of additional leave.  Long term disability is a benefit, not a form of leave.  There was no other leave available for Golden, except for the General Leave of Absence Policy.  In fact, Golden's situation appears to be a perfect example for application of the General Leave of Absence Policy, but Defendant declined her request.

Third, Defendant claims that Golden's request was neither direct nor specific, and she did not show that her request for leave was somehow linked to her disability.  [Def.'s

Br. p. 22].  It is unclear what level of specificity Defendant expects[4], but Golden's email provides more than enough information to identify for any reasonable person what type of accommodation she was seeking.  Golden identifies her cancer diagnosis, her status on medical leave, and Golden specifically states that she is "requesting an unpaid leave of absence per city policy."  Defendant admits that Walden construed her request as a request for six (6) months of unpaid leave under the General Leave of Absence Policy.  [Walden Dep. p. 65].  Golden testified that she was only seeking six (6) months of medical leave, and she simply needed time to fight her cancer.  If any ambiguity exists in her email (which there is none), then Walden had a duty to interact with Golden concerning the particulars of her request, but this did not happen.  Walden summarily denied her request without engaging in any further communications with Golden.

Finally, Defendant advocates for adoption of a "too little, too late" doctrine.  [Def.'s Br. p. 23].  The Seventh Circuit has not adopted this doctrine, and for good reason.  The timing of Golden's request is not a proxy for its reasonableness under the Rehabilitation Act.  Further, Golden made her request for extended leave on the same day she learned of the city's policy for six (6) months of extended medical leave.  [Golden Dep. pp. 93-94].  As stated above, Walden never even considered the timing of Golden's request as a factor in her denial.

---

[4] Golden did not need to use the word "accommodation" or any other magic words.  *Schmidt v. Safeway, Inc.*, 864 F.Supp. 991, 997 (D. Oregon 1994); *see also Monroe v. State of Ind.*, 2016 WL 1270202, * 12 (S.D. Ind. March 31, 2016) ("It is true, as Mr. Monroe argues, that an individual need not use any particular 'magic words' to request an accommodation . . . .").

C.      **Golden is a Qualified Individual with a Disability**

An individual is disabled under the ADAAA if the individual (1) has a physical or mental impairment that substantially limits a major life activity, (2) has a record of such impairment, or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(1).  The issue of whether Golden is a qualified individual with a disability is governed by the amended ADA, which is construed broadly in favor of coverage.  42 U.S.C. § 12102(4)(A).  Golden's diagnosis and treatment of cancer constitutes a physical disorder under the ADAAA, and Golden's cancer substantially limits her major bodily function of "normal cell growth."  42 U.S.C. § 12102(2)(B); *see also* 29 C.F.R. § 1630.2(g)(4)("[e]xamples of impairments that will consistently meet the definition of disability include, but are not limited to . . . (B) Cancer, which substantially limits major life activities such as normal cell growth); *see also Hoffman v. Carefirst of Fort Wayne, Inc*., 737 F.Supp.2d 976, 985 (N.D. In. 2010) (finding cancer patient in remission still disabled under ADAAA).

Defendant insists that the Court examine whether Golden could perform her job duties at the time of termination, but leave is different.  The accommodation of leave can only be fully achieved at the end of the leave period.  The definition of a "qualified individual" under the ADAAA requires consideration of whether a reasonable accommodation would enable the employee to perform the essential functions of the job.  42 U.S.C. § 12111(8).  Having established that six (6) months of unpaid leave is a reasonable accommodation, the undisputed facts show that Golden is a qualified individual with a disability.  During Golden's requested leave period, she could have returned to work and performed light duty tasks until fully released.  "It would be entirely

against the import of the ADA if [the plaintiff] were not considered qualified because he was not able to perform his essential job functions during his leave, as leave itself was the accommodation requested." *Bernhard v. Brown & Brown of Lehigh Valley, Inc.*, 720 F.Supp.2d 694, 701 (E.D. Pa. 2010).  As another Court has noted, "if an employee's ability to perform essential job functions were evaluated solely with regard to the period of time during which [he or she was] on medical leave, no employee [who] was forced by disability to take medical leave could *ever* be a 'qualified individual' under the ADA." *Donelson v. Providence Health & Serv. – Washington*, 823 F.Supp.2d 1179, 1189 (E.D. Wash. 2011) (denying summary judgment because employee was able to perform job functions before and after medical leave).

In *George v. Utility Trailers of Indianapolis, Inc.*, 2014 WL 5509240 (S.D. Ind. Oct. 31, 2014), the District Court confronted the same argument by Defendant and stated "[t]o accept Defendant's argument, the Court would have to find that a medical leave is not a reasonable accommodation and that the ADA does not protect individuals on leave because they are not qualified individuals as a result of their absence.  This is neither the letter nor the intent of the ADA." *Id*. at * 9.  If the Court were to assess Golden as of the date of her termination, in essence this amounts to assessing Golden with no accommodation whatsoever.  The statutory definition of "qualified individual" mandates consideration of reasonable accommodations. 42 U.S.C. § 12111(8).

For example, in *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243 (9th Cir. 1999), the Ninth Circuit reversed a district court that took the action that Defendant advocates.  "By focusing on Nunes' disability during the period of her medical leave, the district court misapplied the ADA's 'qualified individual' requirement." *Id*. at 1247.  The Ninth

22

Circuit found that, since medical leave may be a reasonable accommodation, the proper inquiry was "whether the accommodation sought [continuing medical leave another month or so] would impose an undue hardship on Wal-Mart" in light of Wal-Mart's policy of allowing eligible employees to take up to a year of unpaid medical leave and its practice of hiring temporary employees to held during the holiday season.  *Id*.

In *Alwood v. Ecolab, Inc.*, 1:2014-cv-00101 (D. Mont. April 11, 2016), the District Court just recently rejected the same argument set forth by Defendant.  "This interpretation of the law is illogical and would preclude virtually all disability discrimination claims.  For example, if a painter broke his arm on Monday, and his employer filled his position on Friday, Ecolab suggests that the painter is a 'qualified individual with a disability' only if, with his broken arm, he could have painted on Friday."  *Id*. at * 11.  Here, Defendant makes the same illogical argument.

In another case, very similar to this matter, the First Circuit reversed the district court's grant of summary judgment where the employer refused to extend an employee's medical leave another four-and-a-half (4.5) months to allow her to finish recuperating from cancer treatment, after she had been on medical leave for an extended period of months.  *Garcia-Ayala v. Lederle Parenterals, Inc*., 212 F.3d 638, 641-42 (1st Cir. 2000). The First Circuit rejected the district court's decision that Garcia was not a "qualified individual" because her medical providers could not guarantee a return to work date within the designated leave period.  *Id*. at 646-47.  The First Circuit reversed summary judgment for the employer, summarily entered judgment in favor of the employee without the need for a trial, and criticized the lower court for failing to conduct an

individualized assessment of the case as mandated by the ADA. *Id*. at 647. So too, in this matter, the Court should summarily enter judgment in favor of Golden.

Golden's need for additional leave does not divest her of protection as a qualified individual with a disability. If Defendant would have granted Golden's request, then she would have been released to return to work in July of 2015, within the six (6) month period, in a light duty capacity. [Golden Dep. p. 84,]. Defendant cannot contend that Golden must have been released full duty, without any restrictions, to be considered a "qualified individual," because a 100% healed policy would violate the Rehabilitation Act. *Steinker v. Enovapremier, LLC*, 2012 WL 3597392, * 7 (S.D. Ind. Aug. 20, 2012). Golden has established all necessary elements of her failure to accommodate claim under the Rehabilitation Act, and summary judgment should be granted in her favor. Like *Garcia-Ayala*, a trial is not necessary.

### D. Defendant failed to Engage in the Interactive Process

Golden's prior discussions with Simmons about returning in August of 2015, and in particular Golden's email on April 13, 2015, should have triggered the interactive process under the ADAAA. But Defendant woefully failed its statutory obligations.

The ADAAA does not give employers unfettered discretion to decide what is reasonable and what is unreasonable. *Miller v. Ill. Dept. of Transp*., 643 F.3d 190, 199 (7th Cir. 2011). The law requires employers to rethink their preferred practices or established methods of operation, i.e. Defendant's rigid maximum sixteen (16) week policy. *Id*; *see also Vande Zande v. State of Wisconsin Dept. of Admin*., 44 F.3d 538, 542 (7th Cir. 1995)("It is plain enough what 'accommodation' means. The employer must be willing to consider making changes in its ordinary work rules, facilities, terms, and

conditions in order to enable a disabled individual to work."). The interactive process requires good faith efforts to assess an employee's needs and respond to those needs. *Dowers v. Noblesville Schools*, 2012 WL 4794664, * 5 (S.D. Ind. Oct. 9, 2012). An employer's duty to consult with an employee is essential to engage in good faith in the interactive process. *See Bultemeyer v. Fort Wayne Comm. School Corp.*, 100 F.3d 1281, 1286 (7th Cir. 1996) ("This whole incident may not have happened if someone at FWCS had merely had the patience to sit down the Bultemeyer and ask him what the problem was.").

Here, the undisputed evidence shows that Defendant was completely unwilling to deviate from its maximum allotment of sixteen (16) weeks of medical leave. On April 13, 2015, prior to her termination, Golden emailed Defendant and requested an unpaid leave of absence. Golden's email invited Defendant to contact her if Defendant had any questions. Under these circumstances, Defendant was required to rethink its draconian sixteen (16) week unwritten termination policy and consult with Golden about potential reasonable accommodations (medical leave), including discussing Defendant's actual written General Leave of Absence policy. Instead, just a few hours later and without any interaction with Golden, Defendant denied Golden's request and terminated her employment.

### E. Defendant's *Per Se* Discrimination under the ADAAA

"It is unlawful for a covered entity to discriminate on the basis of disability against a qualified individual in regard to . . . [l]eaves of absence, sick leave, or any other leave . . . ." 29 C.F.R. § 1630.4(a)(v). The ADAAA mandates an individualized assessment of an employee's disability and capabilities. *Hendricks-Robinson v. Excel*

*Corp.*, 154 F.3d 685, 699 (7th Cir. 1998). This is why a 100%-healed policy constitutes *per se* discrimination under the ADAAA. *Steinker v. Enovapremier, LLC*, 2012 WL 3597392, * 7 (S.D. Ind. Aug. 20, 2012). "A per se violation is one in which an individual assessment of an individual's ability to perform the essential functions of the person's job with or without accommodation is not made by the employer." *Hammer v. Bd. of Education of Arlington Heights School Dist. No. 25*, 955 F.Supp. 921, 927 (7th Cir. 1997). Indeed, the entire interactive process under the ADAAA is premised on the idea of an individualized assessment.

Here, Defendant committed a *per se* violation of the ADAAA by failing to conduct an individualized assessment of Golden. Instead, Defendant automatically terminated her employment based on her continuous leave of absence of sixteen (16) weeks without being released to return to work. Defendant's inflexible maximum leave policy runs afoul of the Rehabilitation Act and ADAAA. Defendant admits, in its brief, that "IHA terminates all employees who take 16 weeks of consecutive medical leave and are not able to return to work." [Def.'s Br. p. 20]. Defendant unlawfully categorizes, without an individualized assessment, all employees in two (2) groups: those released within the sixteen (16) weeks and those not released within the sixteen (16) weeks. If in the latter category, like Golden, then Defendant absolutely, under no circumstances, will provide additional leave and the employee is automatically terminated. [Walden Dep. pp. 27, 31-34, 43, 68, 92-93; Simmons Dep. p. 47].

Defendant's maximum leave policy violates the ADAAA because it fails to conduct an individualized assessment to determine if extended medical leave can be a

reasonable accommodation[5].  Employers are required to modify workplace policies, including leave policies, as a form of reasonable accommodation.  See 42 U.S.C. § 12111(9)("reasonable accommodation may include . . . modifications of . . . policies . . . ."); *see also Barnett*, 535 U.S. at 397-98 (stating that an employer may be required to modify a disability-neutral policy to create a reasonable accommodation).  What if an employee needs seventeen (17) weeks, or eighteen (18) weeks, or sixteen (16) weeks and one (1) day, or six (6) months like this case?  The duty to accommodate is ongoing and does not end simply on the last day of an arbitrary sixteen (16) week leave period.  Whether additional leave is a reasonable accommodation, and the length of leave, should be determined on a case-by-case basis, but that did not happen here.  Golden needed time to heal, and Defendant made no effort to conduct an individualized assessment to see if that would be a reasonable accommodation.

In essence, Defendant's position is that the six (6) months of leave under the General Leave of Absence policy applies only for non-medical reasons, otherwise the automatic termination unwritten policy will apply after sixteen (16) weeks of continuous medical leave.  Defendant, thus, allows a greater amount of leave to non-disabled individuals and will not even consider allowing such leave for disabled individuals, regardless of individualized circumstances.  Accordingly, Golden requests summary judgment on her *per se* discrimination claim under the Rehabilitation Act.

---

[5] For example, in 2009 Sears entered into a $6.3 million consent decree with the EEOC due to its maximum one-year leave policy.  In 2011, Supervalu entered into a $3.2 million consent decree with the EEOC due to its maximum one-year leave policy.  In 2012, Interstate Distributor Co. entered into a $4.85 million consent decree with the EEOC due to its maximum twelve (12) week leave policy.  In 2014, Princeton Healthcare entered into a $1.35 million consent decree with the EEOC due to its maximum twelve (12) week leave policy.

**F.      Application for SSD and LTD is Irrelevant**

Golden's application for benefits under the Long Term Disability Policy and Social Security Disability does not affect her status as a qualified individual under the Rehabilitation Act because LTD and SSD do not consider reasonable accommodations. Defendant cites *Weigel v. Target Stores*, but ignores the Seventh Circuit's most recent opinion on this exact issue.  In *Rutledge v. Illinois Dept. of Human Services, et al*, 785 F.3d 258 (7th Cir. 2015), the Seventh Circuit permitted the plaintiff to proceed with his case under the Rehabilitation Act, even though the plaintiff was deemed 100% disabled by the Veterans Administration.  *Id*.  The Seventh Circuit that there was "no paradox" between being totally disabled under SSD yet at the same time holding employment.  *Id*. at 259.  This is because the Rehabilitation Act requires employers to make reasonable accommodations, whereas LTD and SSD do not consider reasonable accommodations. *Id*. at 260.  Further, Golden's LTD application only represented that she was disabled through July 3, 2015 (prior to being released on light duty and within the six (6) month leave period), and Golden was denied SSD.  [Golden Dep. p. 128].  Accordingly, Golden's LTD status and request for SSD does not affect her protection under the Rehabilitation Act.

**V.      Conclusion**

Golden respectfully requests the Court GRANT her Motion for Summary Judgment, enter Judgment in favor of Golden, and set this matter for a damages hearing.

Respectfully Submitted,


*/s/ Ryan P. Sink*
Ryan P. Sink

Attorney for Plaintiff

Fox Williams & Sink, LLC
8465 Keystone Crossing
Suite 250
Indianapolis, IN 46240

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served this 29th day of April, 2016, by the Court's electronic filing system to the following counsel of record:


Kathleen Ann Delaney: Kathleen@delaneylaw.net
Kathleen E. Field: Kfield@delaneylaw.net


*/s/ Ryan P. Sink*
Ryan P. Sink