UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARYTZA GOLDEN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) 1:15-cv-00766-RLY-DML |
| INDIANAPOLIS HOUSING AGENCY, | ) ) ) |
| Defendant. | ) |

**ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION TO STRIKE**

Plaintiff, Marytza Golden, was formerly employed by Defendant, the Indianapolis Housing Agency ("IHA"), as a Public Safety Officer. Following her diagnosis of breast cancer in November 2014, Plaintiff sought leave under the Family Medical Leave Act ("FMLA"), plus an additional four weeks, in order to treat her condition. IHA terminated her employment when it was determined that she was unable to return to work following her sixteen-week leave.

In the present action, Plaintiff alleges[1] IHA both failed to provide her with a reasonable accommodation and terminated her on the basis of her disability, in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* The parties cross-move for summary judgment on both claims, and IHA separately moves to strike the Affidavit of Stephen Golden. For the reasons set forth below, the court **GRANTS** IHA's Motion for

---

[1] Plaintiff also brought a claim for race discrimination, which was dismissed by court order on April 12, 2016. (*See* Filing No. 52).

1

Summary Judgment, **DENIES** Plaintiff's Motion for Summary Judgment, and **DENIES as MOOT** IHA's Motion to Strike the Declaration of Stephen Golden.

I.   **Background**

IHA is a federally funded employer within the meaning of Section 504 of the Rehabilitation Act. (Filing No. 59-2, Deposition of Rufus Myers at 22). Plaintiff was employed by IHA as a Public Safety Officer from June 1999 to April 2015. (Filing No. 25, Deposition of Marytza Golden ("Plaintiff Dep.") at 14, 29). IHA officers are police officers who are required to carry a firearm and whose main functions include responding to calls for service, investigating crimes, protecting the public, protecting IHA assets, responding to 911 calls, providing emergency aid, and protecting and serving the public. (Filing No. 47-18, Indianapolis Housing Agency Job Description; *see also* Filing No. 47-26, Deposition of Stephen Golden ("S. Golden Dep.") at 26 (testifying that public safety officers "respond to calls for service, investigate crimes, protect the public, protect agency assets, respond[] to 911 calls," make arrests and provide emergency aid)).

In November 2014, Plaintiff was diagnosed with invasive triple negative ductal carcinoma breast cancer. (Plaintiff Dep. at 51, 89). Plaintiff informed IHA of her serious medical condition and, on December 11, 2014, requested FMLA leave. (Filing No. 47-5, FMLA notes). Her request was granted. (*See* Filing No. 47-10, Letter from Richard Simmons to Plaintiff). On December 18, she underwent a right side mastectomy and had five lymph nodes removed. (Plaintiff Dep. at 51, 54). Plaintiff's cancer treatment included chemotherapy and the necessity of additional surgeries. (*Id.* at 51-52).

2

On December 19, 2014, Plaintiff's doctor completed a Certification of Health Care Provider ("CHP") form. At that time, the probable duration of her condition was described as "ongoing." (Filing No. 47-11, December CHA, Part A). Her doctor described her period of incapacity as "12/18/14 until released," and noted that a further treatment plan would be determined post-surgery. (*Id.*, Part B).

Plaintiff understood that she would be medically unable to return to work at the end of her FMLA leave (March 16, 2015). (Plaintiff Dep. at 68). She therefore contacted Human Resources Generalist Richard Simmons and told him she would like to apply for long-term disability benefits under IHA's group policy with Lincoln Financial Group. (*Id.*). In the employee statement portion of the application, which she signed on March 2, 2015, Plaintiff represented that she "cannot perform [her] job descriptions safely" and that she needed hands-on help to safely perform the activities of daily living, including "bathing, cooking, [and] walking stairs." (Filing No. 47-29, Long-Term Disability Application at 14, Section C). Simmons completed the employer portion of Plaintiff's application and returned it to Plaintiff on March 6, 2015. (*Id.* at 3). Four days later, Plaintiff's direct supervisor, Michael Mays, completed the Long-Term Disability Claim Job Analysis. (*Id.* at 4-5). Mays stated that Plaintiff's job could not be modified to accommodate her disability either temporarily or permanently and that it was not possible to offer her assistance in doing her job. (*Id.* at 5). Plaintiff submitted her long-term disability claim to Lincoln Financial on March 11, 2015. (*Id.*).

On March 13, 2015, Simmons sent Plaintiff a letter informing her that her FMLA leave expired on March 16, 2015. (Filing No. 47-6, Letter from Richard Simmons to

3

Plaintiff). Simmons noted that the latest information from Plaintiff's health care provider did not provide an end date to her leave of absence but that, per IHA custom, employees who cannot return to work due to a medical condition may take an additional four weeks of medical leave. (*Id.*). He enclosed a new CHP form and requested that Plaintiff have her health care provider give IHA updated information as to her condition, and invited Plaintiff to contact the Human Resources Department with any questions. (*Id.*). Plaintiff took the additional four weeks of leave and thus, was required to return to work on April 14, 2015. (*Id.*; Plaintiff Dep. at 66).

On March 31, 2015, Plaintiff's health care provider listed the probable duration of her condition as "ongoing." (Filing No. 47-9, March CHA, Part A). She noted that Plaintiff was unable to perform her job functions due to the condition, and, as with her prior CHP, listed the estimate for beginning and end dates for the period of incapacity as "12/18/14 – until release." (*Id.*, Part B).

On April 13, 2015, Plaintiff came unannounced to IHA's Human Resources office and had a meeting with Director of Human Resources Kathy Walden and Simmons. (Filing No. 47-32, Deposition of Kathy Walden ("Walden Dep.") at 44-45). They discussed the March 13 letter, her retirement benefits, and her long-term disability benefits. (*Id.* at 45). At Plaintiff's request, Walden provided her copies of long-term disability documentation, the documentation IHA had received from Plaintiff's health care provider, and the last CHA form IHA had received regarding Plaintiff. (*Id.*). Plaintiff did not ask for a reasonable accommodation during the meeting. (*Id.* at 83).

4

Later that evening, at 6:10 p.m., Plaintiff sent an e-mail to Walden and Simmons which stated:

> I am requesting an unpaid leave of absence per city policy. If you have additional questions please contact me as you are aware I am off work due to diagnosis of cancer and I was informed today by Human Resources that Tuesday, April 14, 2015 will be my last day of employment.

(Filing No. 47-16, April 13 Email). Walden replied on April 15: "Your unpaid leave of absence request is denied. If you have any additional questions, I can be reached at [phone number]." (*Id.*).

In her deposition, Walden testified that she interpreted Plaintiff's email request as a request for leave pursuant to IHA's General Leave of Absence (Unpaid Leave) ("LOA") policy. (Walden Dep. at 65; Filing No. 59-8, LOA policy). The policy provides, in relevant part:

> The Director of Human Resources in conjunction with the Department Director may approve a leave without pay for a specified period of time (not to exceed six (6) months) when it is determined that no other leave form is appropriate. All such leaves are approved only after consideration of the effect of the leave on the department's operations and receipt of the appropriate supporting documentation.
>
> Requests for leave must be filed initially with the Human Resources Department. Except in emergencies, the employer is required to make his/her request at least two (2) weeks in advance of the anticipated leave.
>
> . . .
>
> The employee is expected to return to work as noted on the approved leave request, unless an extension has been granted. If the employee wishes to return to work before the approved date, two (2) weeks' notice must be given to his/her department and the Human Resources Department.

5

(LOA policy). The policy applies, Walden explained, to those who seek military leave and to those who ask for a sabbatical, as those forms of leave are not covered by another IHA leave policy. (Walden Dep. at 33). IHA does not provide additional medical leave beyond the twelve weeks of FMLA and four additional weeks of IHA-provided leave. (*Id.* at 31, 33).

Plaintiff was approved for long-term disability benefits on April 21, 2015. (Filing No. 47-36, Letter from Lincoln Financial to Plaintiff).

Effective July 6, 2015, Plaintiff was medically released by her oncologist for light duty work, limited to a maximum shift of eight hours but no more than twenty hours per week, and a lifting restriction of no greater than fifteen pounds. (Filing No. 47-12, Medical Release). On August 19, 2015, Plaintiff was admitted to the hospital for a left mastectomy, and was unable to work until September 8, 2015, when she had a medical work release limiting her to working a maximum of ten hours per week with an additional lifting restriction of no more than ten pounds. (Filing No. 47-38, Operative Report; Filing No. 47-13, Medical Release). On November 23, 2015, Plaintiff underwent surgery again, and was medically released to return to work without any restrictions on December 7, 2015. (Filing No. 47-39, Medical Release). Plaintiff became medically unable to work three days later due to another surgery. (Plaintiff Dep. at 85). She was medically returned to work with various work restrictions again beginning February 22, 2016, and, as of May 13, 2016, her restrictions are extended indefinitely. (Filing No. 47-41, Medical Release; Filing No. 72-1, Medical Release).

6

Plaintiff's long-term disability benefits ended on March 18, 2016. (Filing No. 59-12, Letter from Lincoln Financial Group to Plaintiff).

Additional facts necessary to the court's determination will be addressed in the Discussion Section below.

## II. Motion to Strike

Before addressing the merits of the parties' motions for summary judgment, the court must first address IHA's Motion to Strike the Declaration of Stephen Golden, Plaintiff's husband. Golden serves as IHA's Director of Special Investigations and, before they started dating, she reported to him. (S. Golden Dep. at 13). After they started dating, Golden had no supervisory authority over her; instead, she reported to Mays and Bud Myers. (*Id.* at 13, 19).

In his December 1, 2015 deposition, Golden testified with respect to the essential duties of a Public Safety Officer. (*Id.* at 26). Regarding light duty, he testified as follows:

> Q: In your opinion, was your wife able to work in April of 2015?
>
> A: My wife would have been able – by the police department rules and regulations, and the reasonable accommodations that IHA has given in the past to other police department employees, absolutely she could have. She could have worked light duty, because the majority of the work that we do is in the front of a computer and we never leave the office.

(*Id.* at 29). In his April 7, 2016 declaration, Golden testified that "[l]ight duty work has been available for police officers from April of 2015 until the present." (Filing No. 62-4, Declaration of Stephen Golden ¶ 3). IHA contends his declaration conflicts with his prior deposition testimony and should be stricken.

7

When a party submits its own declaration to supplement prior deposition testimony, the court disregards any portion of the declaration that directly conflicts with the prior testimony. *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 809 n.1 (7th Cir. 2015). To avoid exclusion of a conflicting statement, the party advocating its admission must advance "a plausible explanation, such as confusion, ambiguity, refreshed recollection, or newly discovered evidence." *Miller v. Heritage Prods., Inc.*, No. 1:02-cv-1345-DFH, 2004 WL 1087370, at *5 (S.D. Ind. Apr. 21, 2004) (citing *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001) (affidavit contradicted specific answers to repeated and specific questions)). Here, a plausible explanation exists: IHA never asked Golden whether light duty work was available after April 2015. *See id.* ("While the courts are rightly concerned about the creation of "sham" factual issues, they must also be careful not to allow the deposition process to be used to silence later a witness who was not asked the right questions."). Therefore, the court finds that Golden's declaration does not directly conflict with his prior deposition testimony. However, Plaintiff's victory is short-lived because, as explained below, she is not a qualified individual with a disability who was able to perform the essential functions of her position with or without the accommodations of medical leave followed by a light duty assignment. (*See* Entry, Section IV. A. 2). Accordingly, IHA's Motion to Strike is **DENIED as MOOT**.

III. **Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists on cross motions for summary judgment, the court's review of the evidence requires it to "construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." *First State Bank v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009) (internal quotation marks and citations omitted).

## IV. Discussion

The Rehabilitation Act provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activating receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). Plaintiff alleges the IHA violated Section 504 Rehabilitation Act when it denied her request for a six-month leave of absence and instead terminated her. Because her claim arises in the employment context, the standards used to determine whether Section 504 has been violated "shall be the standards applied under [T]itle I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111 *et seq.*) . . . ." 29 U.S.C. § 794(d); *see also Jackson v. City of Chi.*, 414 F.3d 806, 810-11 (7th Cir. 2005) ("In order to determine whether the Rehabilitation Act has been violated in the employment context, [the court] refer[s] to the provisions and standards of the ADA.").

### A. Failure to Accommodate

Count II of the Amended Complaint alleges that IHA refused to provide Plaintiff

9

with the accommodation of medical leave. *See Gratzl v. Office of the Chief Judges of the 12th, 18th, 19th, & 22nd Judicial Circuits*, 601 F.3d 674, 680 (7th Cir. 2010) (addressing plaintiff's failure to accommodate claim under the ADA and the Rehabilitation Act). To establish a *prima facie* case for failure to accommodate, Plaintiff must show that: (1) she is a qualified individual with a disability; (2) the IHA was aware of her disability; and (3) the IHA failed to reasonably accommodate her disability. *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747-48 (7th Cir. 2011). The IHA contests elements (1) and (3).

A qualified individual with a disability is defined as an individual with a disability "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 1211(8). Under the ADA and Rehabilitation Act, a "reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities," 42 U.S.C. § 12111(9)(B), such as a medical leave of absence. *See* 29 C.F.R. pt. 1630, App. § 1630.2(o) ("[O]ther accommodations include . . . providing additional unpaid leave for necessary treatment."); *see also Basith v. Cook Cty.*, 241 F.3d 919, 932 (7th Cir. 2001) ("During much of the time at issue in this case, Basith was on medical leave of absence, and the district court held that this qualifies as a reasonable accommodation. *See* 29 C.F.R. § 1630.2(o), App. We agree with this holding."). However, if the accommodation "would impose an undue hardship" on the operation of the employer's business, an accommodation need not be made. 42 U.S.C. § 12112(b)(5)(A). "Whether or not an individual meets the definition of a qualified individual with a disability is to be

determined as of the time the employment decision was made." *Bay v. Cassens Trans. Co.*, 212 F.3d 969, 974 (7th Cir. 2000).

At the time of her termination, Plaintiff could not perform the essential functions of her job without an accommodation. That is undisputed. The issue, then, is whether Plaintiff could perform the essential functions of her job *with* the accommodation of medical leave pursuant to the Leave of Absence Policy. Had IHA granted her April 13, 2015 request for leave, the argument goes, she could have performed "light-duty," part-time work beginning on July 6, 2015. Plaintiff's request for additional leave is problematic for two reasons.

First, the Leave of Absence policy did not apply to her.[2] The policy applies to non-medical leaves of absence "when it is determined that no other leave form is appropriate," such as military leave. (LOA Policy). For Plaintiff, there were other forms of leave available, such as FMLA and IHA's four-week medical leave.

Second, assuming for the sake of argument that IHA's Leave of Absence policy did apply to Plaintiff, her request for leave was not reasonable. A request for leave is reasonable if two circumstances are met: (1) the request is for a reasonable length of time,

---

[2] In addition, Plaintiff's after-hours email request for additional unpaid leave did not comply with the terms of the Leave of Absence policy. The policy requires that a leave request be made at least two weeks prior to the anticipated leave. Plaintiff applied on the evening of April 13, 2015, the day before her termination. In addition, the email message did not specify a period of time for unpaid leave, nor did it provide a return to work date. Plaintiff claims her tardy filing should be excused because she did not know about the policy until April 13. (Plaintiff Dep. at 93-94) ("Mr. Owensby from FOP was the one that told me that regularly officers for the city, when they are in the same kind of situation or something similar to mine, they request a leave of absence without pay."). In fact, at the time she wrote the email requesting leave, Plaintiff had not read the policy. (*Id.* at 93). Viewing the facts in the light most favorable to Plaintiff, the court excuses her tardy filing.

*see Byrne v. Avon Prods., Inc.*, 328 F.3d 379, 381 (7th Cir. 2003), and is not indefinite, *Nowak v. St. Rita High Sch.*, 142 F.3d 999, 1004 (7th Cir. 1998); and (2) the medical evidence at the time of the request shows that the employee's "regular attendance could have been expected following the leave sought," *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1038 (7th Cir. 2013).

### 1. Length of Leave

Here, Plaintiff requested an "unpaid leave of absence per city policy." (April 13 Email). Plaintiff characterizes her request as one for a six-month period of leave. In addressing the length of an employee's requested leave, the court is guided by two Seventh Circuit cases: *Haschmann v. Time Warner Entm't Co.*, 151 F.3d 591 (7th Cir. 1998) and *Byrne*, *supra.*

In *Haschmann*, the plaintiff was diagnosed before her termination with lupus, causing her to miss work on an intermittent basis. 151 F.3d at 599-600. During one of her flares, the plaintiff requested leave for a two-to-four week period, and her doctor was "optimistic that the flare would be short lived." *Id.* at 600-01. Nevertheless, within five days of her request for medical leave, her employer fired her. *Id.* at 600. The Seventh Circuit affirmed the jury verdict in favor of the plaintiff, and found that her request for a two-to-four-week period of leave, in light of the evidence, was reasonable. *Id.* at 601-02.

In *Byrne*, an employer fired an engineer for sleeping on the job. 328 F.3d at 380. Following his termination, he received two months of treatment for severe depression and was cleared to work. *Id.* He asked for his job back, but his employer refused. *Id.* The Seventh Circuit held that the plaintiff's employer was not required by the ADA to

12

provide two months of leave, even though "two months of treatment enabled [the plaintiff] to surmount his mental difficulties." *Id.* at 380-81. The court explained:

> The sort of accommodation contemplated by the Act is one that will allow the person to "perform the essential functions of the employment position." Not working is not a means to perform the job's essential functions. An inability to do the job's essential tasks means that one is not "qualified"; it does not mean that the employer must excuse the inability.
>
> Time off may be an apt accommodation for intermittent conditions. . . . But Byrne did not want a few days off or a part-time position; his only proposed accommodation is not working for an extended period of time, which as far as the ADA is concerned confesses that he was not a "qualified individual" in late 1998. . . .

*Id.* at 381.

In the present case, Plaintiff sought six months of leave *in addition to* the sixteen weeks she had already received. Pursuant to Seventh Circuit case law, Plaintiff's request was unreasonable as a matter of law. *See also Basden*, 714 F.3d at 1037 ("A plaintiff whose disability prevents her from coming to work regularly cannot perform the essential functions of her job, and thus cannot be a qualified individual for ADA purposes."); *Oestringer v. Dillard Store Servs., Inc.*, 92 Fed. App'x 339, 341 (7th Cir. 2004) ("It is true that an employer's failure to accommodate reasonable requests for medical leave violates the ADA, but a request for medical leave is reasonable only if it is for a short amount of time" and is not "indefinite") (internal citations omitted); *Severson v. Heartland Woodcraft, Inc.*, No. 14-C-1141, 2015 WL 7113390, at *7 (E.D. Wis. Nov. 12, 2015) ("[T]he case law in the Seventh Circuit provides that a person is not 'a qualified individual' if his disability prevents him from performing the essential functions of his job for months at a time.") (quoting *Byrne*, 328 F.3d at 380-81); *DeLon v. Eli Lilly &*

13

*Co.*, 990 F.Supp.2d 865, 875 (S.D. Ind. 2013) ("The evidence demonstrates that Ms. DeLon requested an extended leave of absence of at least approximately two months, which the Seventh Circuit has held 'removes her from the class protected by the ADA.'") (quoting *Byrne*, 328 F.3d at 381).

Plaintiff also points out that she was released to return to work, at least temporarily, for light duty work in July of 2015, less than six months after her April 13, 2015 request for leave. Yet, at the time IHA terminated Plaintiff's employment, there was no medical evidence that she would be returning in July or at any time in the near future. The fact that, in hindsight, Plaintiff did not need the full six months from her April 13, 2015, request before temporarily being released for light duty work is irrelevant for purposes of this analysis. *Amadio*, 238 F.3d at 928 ("The facts relevant to a determination of whether a medical leave is a reasonable accommodation are the facts available to the decision-maker at the time of the employment decision.") (citations omitted).

### 2. Attendance Could Be Expected at the End of Leave

In determining whether Plaintiff's regular attendance could have been expected following the leave she sought, the court considers not only the facts available to the decision-maker at the time of the termination, but also non-speculative evidence showing that, in hindsight, the requested leave would have enabled her to work on a regular basis. *See Basden*, 714 F.3d at 1038 (in determining whether plaintiff's request for a 30-day leave of absence was reasonable, the court considered the plaintiff's employment record after her termination). Two Seventh Circuit decisions are worthy of note.

In *Basden*, *supra*., the plaintiff suffered from symptoms consistent with multiple sclerosis and, consequently, was unable to appear for work on multiple occasions. *Id*. at 1036-37. Her employer denied her request for a thirty-day leave of absence and, when she failed to appear for work following a suspension, she was fired. *Id.* at 1037. At the time of her termination, she had not seen the specialist who diagnosed her with the condition, nor had she started medication for the disease. *Id.* In her response to the employer's motion for summary judgment, the plaintiff submitted "evidence that medication improved her condition; that she had hoped for enough improvement to return to work regularly after leave; and that she subsequently had brief employment that was interrupted by a two-week absence caused by her condition." *Id.* at 1038. In affirming the district court's grant of summary judgment in favor of the employer, the Seventh Circuit stated that the employee's "evidence was insufficient to support a factual finding that [the plaintiff] was able to come to work regularly at the time of her termination, or that her regular attendance could have been expected following the leave she sought or with any other accommodation." *Id.* The court distinguished *Haschmann* as follows:

> In *Hashmann*, the plaintiff had been diagnosed before her termination with a condition that caused an "intermittent" need for leave but permitted her to return to a normal work schedule thereafter. 151 F.3d 599-600. The plaintiff's prediction of a brief need for leave was supported by her doctor. *Id.* at 601. In contrast, at the time of Basden's termination, she had no final diagnosis, no prescribed treatment, and no anticipated date by which she could have been expected to attend work regularly even if she had been granted leave.

*Id.*

In *Weigel v. Target Stores*, the plaintiff suffered from severe depression and went on short term disability leave. 122 F.3d 461, 463 (7th Cir. 1997). She returned to work for a brief period following her leave, but found she was unable to work. *Id.* Her physician wrote a note recommending that she take medical leave "until further notice." *Id.* Her employer denied her request and fired her. *Id.* In response to the employer's motion for summary judgment, the plaintiff submitted an affidavit from her physician opining that had she been given medical leave, "there was a good chance that [plaintiff] could have returned to her position [with her employer]." *Id.* The Seventh Circuit affirmed the district court's grant of summary judgment and concluded that the doctor's "simple assertion that 'there was a good chance' of [the employee's] return to work is simply too conclusory and uninformative to be given any weight." *Id.* at 469.

In the present case, Plaintiff testified that she "told [Simmons] what her treatment plan would be" and that she "was planning to be back [to work] by August." (Plaintiff Dep. at 174). Plaintiff's testimony is uncorroborated by a doctor's statement or other medical documentation stating that her period of incapacity would be short lived. To the contrary, all of the medical documentation that was provided to IHA stated that the probable duration of Plaintiff's condition was "ongoing," and her period of incapacity would continue "until released." (December CHA; March CHA). As in *Basden*, Plaintiff offered IHA no other documentation regarding her medical status, treatment plan, prognosis, and probable ability to return to work at the end of the requested leave.

In addition, the evidence viewed in hindsight reflects that Plaintiff was unable to perform the essential functions of her job at the end of the requested leave period. In

16

addition to the leave periods IHA approved prior to April 14, 2015 (i.e., from December 7, 2014 to April 14, 2015), IHA would have been required to accommodate four additional leave periods: (1) April 15, 2015, to July 5, 2015; (2) August 19, 2015, to September 7, 2015; (3) November 23, 2015, to December 6, 2015; and (4) December 10, 2015, to February 21, 2016. In between those leave periods, Plaintiff would have been restricted to perform only "light duty" work, and, based on her latest Medical Release, she is restricted to this day.

This evidence compels the court to find that Plaintiff is not a qualified individual with a disability for two reasons. First, while an employer may be required to accommodate an employee with medical leave in addition to FMLA, an employer is not required to accommodate an employee whose attendance is erratic or unreliable. *See Basden*, 714 F.3d at 1037 ("An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance."). Second, an employer has no duty "to reassign an employee to a permanent light duty position." *Gratzl*, 601 F.3d at 680; *Malabarba v. Chi. Tribune Co.*, 149 F.3d 690, 697 (7th Cir. 1998) ("Although the ADA provides that reassignment to a vacant position may constitute a reasonable accommodation, it does not require that employers convert temporary 'light-duty' jobs into permanent ones.").

The evidence demonstrates that Plaintiff requested a lengthy leave of absence with no medical evidence reflecting that she would have been able to perform the essential functions of her position as a Public Safety Officer on a regular basis at the end of her requested leave. Plaintiff's request for additional leave was, therefore, not a reasonable

17

accommodation as a matter of law. As a result, Plaintiff was not a qualified individual with a disability who could perform the essential functions of her position with or without an accommodation. Accordingly, summary judgment in IHA's favor is warranted.

### 3. Interactive Process

Plaintiff also argues that IHA failed to engage in the interactive process to identify a reasonable accommodation. An employee's request for an accommodation requires the employer to engage in a "flexible, interactive process that involves both the employer and the [employee] with a disability." 29 C.F.R. pt. 1630, app.; *Felix v. Wis. Dep't of Transp.*, 104 F. Supp. 3d 945, 956 (E.D. Wis. 2015) (addressing failure to engage in the interactive process under the Rehabilitation Act). Rather than engage in an interactive process, IHA simply denied Plaintiff's request without explanation.

"However, the failure to engage in the interactive process required by the ADA is not an independent basis for liability under the statute, and that failure is actionable only if it prevents identification of an appropriate accommodation for a qualified individual." *Basden*, 714 F.3d at 1039. Thus, "[e]ven if an employer fails to engage in the required process, that failure need not be considered if the employee fails to present evidence sufficient to reach the jury on the question of whether she was able to perform the essential functions of her job with an accommodation." *Id.* Therefore, because the court finds that Plaintiff is not a qualified individual with a disability as a matter of law, IHA's alleged failure to engage in the interactive process is immaterial. *Stern v. St. Anothony's Health Ctr.*, 788 F.3d 276, 293 (7th Cir. 2015) (because the plaintiff "failed to produce adequate evidence that he is a qualified individual . . . this case falls into the category of

cases in which an employer's alleged failure to adequately engage in the interactive process is immaterial").

B.     Per Se Discrimination

Count II of the Amended Complaint alleges that IHA terminated Plaintiff because of her disability. In her briefs, Plaintiff argues that IHA committed a *per se* violation of the Rehabilitation Act when it informed her that she had to return to work by April 14, 2015, or be terminated.

Both the ADA and the Rehabilitation Act require employers to individually assess the employee and the relevant position to determine whether the employee can perform her position with or without an accommodation. *Steffen v. Donahoe,* 680 F.3d 738, 748 (7th Cir. 2012) (citing *Weigel*, 122 F.3d at 466 ("[T]he ADA's 'qualified individual' inquiry . . . necessarily involves an individualized assessment of the individual and the relevant position. . . .")). A policy that requires an employee to be 100% healed before returning to work necessarily operates to exclude disabled people who are qualified to work, and constitutes a per se violation. *Id.* Significantly, a plaintiff can only advance this theory of liability if she is a qualified individual with a disability. *Id.; Powers v. USF Holland, Inc.,* 667 F.3d 815, 819 (7th Cir. 2011). For the reasons just set forth, Plaintiff is not. Accordingly, summary judgment in favor of IHA is appropriate.

V.     Conclusion

The court finds Plaintiff was not a qualified individual with a disability who was able to perform her position as Public Safety Officer with or without an accommodation. Therefore, the court must **GRANT** IHA's Motion for Summary Judgment (Filing No. 45)

19

and **DENY** Plaintiff's Motion for Summary Judgment (Filing No. 57). In addition, IHA's Motion to Strike the Declaration of Stephen Golden is **DENIED as MOOT** (Filing No. 62).

**SO ORDERED** this 23rd day of January 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.